**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 04 C 1201 Magistrate Judge Schenkier |
| vs. | ) ) | |
| W.E. O'NEIL CONSTRUCTION CO., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 17, 2004, Chicago Regional Council Pension Fund, *et al.*, ("Trustees"), filed a two-count complaint against W.E. O'Neil Construction Company ("O'Neil"). Count I asserted a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Taft Hartley Act, 29 U.S.C. § 185, for failure to keep certain records and to make required contributions between July 2001 and March 2003. On that claim, plaintiffs sought various remedies, including an order requiring that O'Neil submit certain work records for the period July 2001 through March 2003; payment of at least $281,366.42 in contributions; and liquidated damages, interest, attorneys' fees and costs. In Count I, plaintiff cited ERISA as the sole basis for their request for attorneys' fees and costs; they did not seek audit fees.

Count II asserted a claim under ERISA and the Taft Hartley Act for an alleged failure to make contributions for two managerial employees; this count did not assert a failure to keep or submit records. As a remedy for this alleged violation, plaintiffs sought payment of $2,959.58 in contributions, along with liquidated damages, interest, audit fees, attorneys' fees and costs. The plaintiffs cited ERISA, the collective bargaining agreement ("CBA") between O'Neil and the

Chicago and Northeast Illinois District Council of Carpenters ("the Union"), and certain Trust Agreements as the basis for their request for audit fees, attorneys' fees and costs.

The underlying claims have been settled, without O'Neil being required to make any monetary payments. The parties have not disclosed whether there are any non-monetary obligations imposed on either party by the settlement, and if so, what those obligations entail. All that now remains of this case is the parties' lingering squabble about audit fees, attorneys' fees, interest and costs.[1] O'Neil opposes plaintiff's motion for fees (doc. # 25), and in its response, O'Neil has requested that it be awarded attorneys' fees (doc. # 30). For the reasons stated below, the Court awards fees neither to plaintiffs nor to defendant.[2]

## I.

We begin with plaintiffs' claims for fees, costs and interest in Count I. In Count I of their complaint, the Trustees seek attorneys' fees, interest and costs; no request was made for audit fees. By contrast, in Count II, plaintiffs seek not only attorneys' fees, costs and interest, but also "auditor fees" (Comp., Count II, ¶ 10). Thus, we do not consider the request for "costs" in Count I to embrace audit fees, since plaintiffs knew how to ask for – and in Count II did ask for – auditor fees when that is what they sought.

As for the term "interest," we interpret that request as seeking interest on unpaid contributions. However, since the case settled without payment, there was no award of unpaid

---

[1]On January 4, 2005, when the parties reported their settlement in open court, on the joint request of the parties the case was dismissed with leave to seek reinstatement in 30 days (doc. # 18). Thereafter, on February 3, 2005, plaintiffs moved to reinstate (doc. # 19). On February 10, 2005, the Court reinstated the case, for the sole purpose of allowing the parties to litigate their fees and costs dispute (doc. # 21).

[2]Pursuant to the consent of the parties in this case and 28 U.S.C. § 636(c), the Executive Committee has assigned this case to this Court for all proceedings, including entry of final judgment (doc. ## 9-10, 12).

contributions, and so nothing on which to base an award of interest. Accordingly, the only possible award plaintiffs can seek on Count I is attorneys' fees and costs.

Plaintiffs' sole basis for claiming attorneys' fees and costs in Count I is ERISA. The complaint does not allege that the CBA or the Trust Agreements provide such a basis; and, it is far too late in the day, after the underlying liability and damages claims have been settled, to entertain an amendment of the complaint to permit a new basis to be asserted for awarding fees and costs under Count I.

The Court concludes that no attorneys' fees or costs should be awarded to plaintiffs under ERISA's fee-shifting provision. 29 U.S.C. § 1132(g). There are two reasons.

*First,* Section 1132(g)(2), by its express terms, requires a judgment before attorneys' fees and costs may be awarded. In this case, no attorneys' fees or costs are permissible under Section 1132(g)(2), since there was no judgment. For that reason, plaintiffs' citation to *Chicago Dist. Council of Carpenters Pension Fund v. Sciortino Contrs.,* 934 F. Supp. 277, 279 (N.D. Ill. 1996), and *Laborer's Pension Fund v. Midwest Demolition Co.,* No. 01 C 8616, 2004 U.S. Dist. LEXIS 3725 (N.D. Ill. Mar. 10, 2004) (Pls.' Mem., Ex. J), is inapposite, since, in those cases, plaintiffs obtained judgments.

*Second,* an award of attorneys' fees and costs is not warranted under Section 1132(g)(1). Under that section, "[i]n any action under this subchapter (other than an action described in paragraph [1132(g)(2)] below) by a participant, beneficiary, or fiduciary, the Court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Thus, unlike the case with Section 1132(g)(2), a judgment in favor of plaintiff is not a prerequisite to an award of attorneys' fees and costs. However, in *Hooper v. Demco, Inc.,* 37 F.3d 287 (7th Cir. 1994), the Seventh Circuit

3

held that the discretion afforded by Section 1132(g)(1) is not open-ended. The Seventh Circuit held

that where (as here) the underlying liability and damages issues were settled, the Court's discretion

to award attorneys' fees and costs to plaintiff was governed by a "prevailing party" standard and a

"substantial justification" analysis. *Hooper*, 37 F.3d at 292.

Under *Hooper*, when presented with a request for attorney's fees and costs under Section

1132(g)(1), a court first must determine if a plaintiff seeking fees is a "prevailing party." The

prevailing party analysis considers two factors: (1) whether the outcome of the plaintiff's suit was

"causally linked to the achievement of the relief obtained," *Hooper*, 37 F.3d at 292; and (2) whether

the suit "prompted" the defendants (the settling party) "to act or cease its behavior based on the

strength of the case, not 'wholly gratuitously' in response to the plaintiff's claims." *Id.* at 293. If

a plaintiff is found to be a "prevailing party" under this analysis, a court then must determine

whether the defendant's litigation position was substantially justified. If the answer to the prevailing

party question is no, then the plaintiff cannot claim fees; if the answer to that question is yes, then

the plaintiff can obtain fees only if the court finds that the defendant's litigation position was not

substantially justified. *Hooper*, 37 F.3d at 294 (citing *Meredith v. Navistar Int'l Transp. Corp.*, 935

F.2d 124, 128 (7th Cir. 1991)).

In *Hooper*, the Seventh Circuit described the first factor of the prevailing party analysis as

a "catalyst" test: "the lawsuit must [be] a 'catalyst' or 'material factor' in obtaining concessions

from the opponent and a favorable outcome to the dispute." *Hooper*, 37 F.3d at 292. Several years

after *Hooper* was decided, the Supreme Court rejected the "catalyst theory" as a basis for

determining whether a plaintiff is a "prevailing party" entitled to attorneys' fees and costs under the

Americans with Disabilities Act and the Fair Housing Amendments Act. *Buckhannon Bd. and Care*

*Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 610 (2001). In a

subsequent decision interpreting a fee provision in the Individuals With Disabilities Education Act

("IDEA"), the Seventh Circuit interpreted the holding in *Buckhannon* as follows:

> In *Buckhannon*, the Supreme Court limited the meaning of the term "prevailing
> party," by rejecting the catalyst theory as a method of attaining prevailing-party status
> under the Americans With Disabilities Act ("ADA") and Fair Housing Amendments
> Act ("FHAA"). 532 U.S. at 605. Under the catalyst theory, which had been accepted
> by many courts before *Buckhannon*, a plaintiff could prevail, if the plaintiff's suit
> was a catalyst that prompted the change that the plaintiff sought. *Buckhannon*,
> however, held that a party could not be a prevailing party without receiving some sort
> of "judicial imprimatur" on the charge. *Id.* at 605. Central to the court's conclusion
> was its finding that the term "prevailing party" was "a legal term of art," which
> signified that the party . . . had been granted relief by a court. *Id.* at 603. As examples
> of the type of relief necessary to attain "prevailing party" status, the court cited a
> judgment on the merits and a consent decree. *Id.* at 604.

*T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 474 (7ᵗʰ Cir. 2003).

## A.

The Seventh Circuit has not expressly addressed whether *Hooper's* analysis survives

*Buckhannon*. However, a further reading of the Seventh Circuit's discussion of *Buckhannon* in

*LaGrange School Dist.* leads us to conclude that the catalyst theory no longer can be used to

determine prevailing party status under Section 1132(g)(1):

> Although *Buckhannon* involved only claims under the "prevailing party" fee-shifting
> provisions of the ADA and FHAA, there is little doubt that the *Buckhannon* Court
> intended its interpretation of the term "prevailing party" to have broad effect upon
> similar fee-shifting statutes. The Court observed that Congress has passed many
> statutes that authorize courts to award attorney's fees to the "prevailing party," such
> as 42 U.S.C. § 1988, and that the Court has interpreted those fee-shifting provisions
> consistently across the federal statutes. *Buckhannon*, 532 U.S. at 602-03 & n.4
> (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, n.7 (1983), which held that the
> standards used in interpreting the term "prevailing party" are "generally applicable
> in all cases in which Congress authorized an award of fees to a 'prevailing party.'").
> Moreover, as noted above, the Court described the term "prevailing party" as a "legal
> term of art," with the relatively fixed and accepted meaning of "a party in whose

favor a judgment is rendered." *Id.* at 603 (citing Black's Legal Dictionary 1145 (7[th] ed. 1999)). Therefore, one would conclude that if a statute contains this legal term of art that has been interpreted consistently across statutes, we should exercise great caution before we give that term different meaning.

*Id.* at 474-475. "Given these considerations," stated the Court,

> at least one circuit has interpreted *Buckhannon* as applying to all "prevailing party" fee-shifting statutes. *See Smyth v. Rivero,* 282 F.3d 268, 274 (4th Cir. 2002). While there is some appeal to the simplicity of this position, this Court has not yet gone that far. Rather, we have left open the possibility that if the "text, structure, or legislative history" of a particular fee-shifting statute indicate[s] that the term "prevailing party" in that statute is not meant to have its usual meaning – as defined in *Buckhannon* – then *Buckhannon*'s strictures may not apply. We reiterate, however, that because "prevailing party" is a legal term of art that is interpreted consistently across fee-shifting statutes, there is a strong presumption that *Buckhannon* applies to each fee-shifting statute that awards fees to "prevailing parties."

*Id.* at 475 (parenthetical omitted). Thus, said the Court of Appeals, to find that *Buckhannon* does not apply to "a 'prevailing party' fee-shifting statute, the 'text, structure, or legislative history' would have to clearly indicate that" in the statute itself. *Id.*

Here, the question we have is whether the *Buckhannon* rule applies to ERISA's Section 1132(g)(1). While Section 1132(g)(1) does not use the words "prevailing party," *Hooper* made clear that Section 1132(g)(1) nonetheless includes a prevailing party standard. Thus, we read the text of Section 1132(g)(1), with the gloss applied by *Hooper*, as including the term prevailing party.

We also see nothing in the structure of ERISA that leads us to conclude that the term "prevailing party," as the Seventh Circuit has applied it to Section 1132(g)(1), has a different meaning than the term as it is used in other fee-shifting statutes. We are mindful that, unlike many other fee shifting statutes, Section 1132(g) has a "two-tier" structure for fee shifting. Section 1132(g)(2) provides that the Court shall award attorneys' fees and costs to a plaintiff who obtains a judgment on a contributions claim. Under that provision, (a) only a plaintiff can be awarded

6

attorneys' fees and costs; (b) a judgment on a contributions claim is a prerequisite to a fee award; and (c) if that prerequisite is satisfied, there is no discretion to deny attorneys' fees and costs – they must be awarded. By contrast, attorneys' fees and costs under Section 1132(g)(1) are not automatic; rather, they may be awarded to a prevailing party at a court's discretion. Moreover, unlike the case with Section 1132(g)(2), attorneys' fees and costs under Section 1132(g)(1) may be awarded to any prevailing party, whether a plaintiff or defendant.

Applying the *Buckhannon* prevailing party standard to fee requests under Section 1132(g) does not disrupt this two-tiered structure. Since Section 1132(g)(2) does not use the term "prevailing party," applying *Buckhannon* to Section 1132(g) would have no effect on the award of attorneys' fees and costs under that subsection. Moreover, applying *Buckhannon* to Section 1132(g)(1) would not deprive that subsection of its separate scope from Section 1132(g)(2). Attorneys' fees and costs still could be awarded under Section 1132(g)(1) in situations where fees and costs are unavailable under Section 1132(g)(2): for example, to plaintiffs – or defendants – who prevail by means other than a judgment, such as by a consent decree or a private settlement incorporated into a court order. And, the fact that Section 1132(g)(1) allows an award of attorneys' fees and costs at the court's discretion is not a structural aspect of the statute that augers against applying *Buckhannon*. We note that both statutory provisions at issue in *Buckhannon* made the award of attorneys' fees and costs to a prevailing party a matter of the court's discretion. *Buckhannon*, 532 U.S. at 601.

Finally, we consider whether anything in ERISA's legislative history overcomes the "strong presumption" that the term prevailing party as it applies to Section 1132 should be given its usual meaning. *LaGrange School Dist.*, 349 F.3d at 475. We have reviewed the legislative history of the ERISA and find nothing to alter the traditional meaning of the term "prevailing party" in connection

with awards of attorneys' fees and costs. *See, Am. Comm. Assoc., Local 10, I.B.T. v. Ret. Plan for Employees of RCA Corp.* 507 F. Supp. 922, 923 (S.D. N.Y. 1981) ("[t]he legislative history of the Act furnishes no guidelines to the Court" for the exercise of its discretion).

Based on the foregoing analysis, we conclude that the *Buckhannon* definition of the "prevailing party" standard applies to Section 1132(g)(1).

## B.

We thus turn to the question of whether plaintiffs here meet the prevailing party standard as articulated in *Buckhannon*. In order to meet the prevailing party standard, plaintiffs must show that they received some sort of "judicial imprimatur" for the relief they obtained. *LaGrange School Dist.*, 349 F.3d at 474. It is plain that their settlement does not satisfy that test.

In this case, there is no judgment or court-ordered consent decree to provide the requisite judicial imprimatur. There was simply a private settlement agreement. There is some authority since *Buckhannon* that a private settlement that vests a court with enforcement jurisdiction is a sufficient judicial imprimatur to satisfy the *Buckhannon* test. *See, e.g., Johnson v. Dist. of Columbia*, 190 F. Supp.2d 34, 45 (D.D.C. 2002) (following *Barrios v. Cal. Interscholastic Fed.*, 277 F.3d 1128 (9th Cir. 2002)). *See also Noyes v. Grossmont Union H.S. Dist.*, 331 F. Supp.2d 1233, 1239-42 (S.D.Cal. 2004) (following *Barrios*). We have some doubt as to whether that analysis is consistent with the *Buckhannon* holding that a prevailing party "is one who has been awarded some relief by the court . . . ." 532 U.S. at 603; *see also* 532 U.S. at 604 n.7 ("[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees. And, federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)).

8

The Seventh Circuit has hewed more closely to the *Buckhannon* analysis, explaining that some settlement agreements, even though not explicitly labeled consent decrees, "may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree," such as where the agreement "is embodied in a court order such that the obligation to comply with its terms is court ordered, [and the] court's approval and the attendant judicial oversight" (in the form of continuing jurisdiction) "may be . . . functionally a consent decree." *LaGrange School Dist.*, 349 F.3d at 478 (7th Cir. 2003) (citing *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002). *See also Doe v. Boston Publ. School*, 358 F.3d 20, 25 (1st Cir. 2004); *John T. ex rel. Paul T. v. Del. County Intermediate Unit*, 318 F.3d 545, 560-61 (3d Cir. 2003). We follow that approach here. There is no continuing jurisdiction or court involvement of any kind in the enforcement of the settlement reached by the parties; nor were the terms of settlement included or incorporated in any dismissal order. Indeed, other than the fact that no money changed hands, we do not even know the settlement terms. Thus, we find that the *Buckhannon* rule bars a fee award under Section 1132(g)(1).

## C.

Moreover, we find that, even if Section 1132(g)(1) were not subject to the *Buckhannon* rule, we would not exercise our discretion to award fees because, under the *Hooper* analysis, plaintiffs have not established that they are prevailing parties.

*First,* insofar as the plaintiffs sought money by filing the complaint, they achieved nothing. *Second,* insofar as the plaintiffs sought to require production of records by filing the complaint, they have not demonstrated what relief on that score they obtained as part of the settlement, much less that any such relief was causally linked to the suit and prompted by it. For example, we note that while the complaint charges that O'Neil did not keep records (Compl. Count I, ¶9(b)), O'Neil denied

9

it. While the correspondence submitted by the parties surely demonstrates that there were disputes between the parties, the correspondence does not persuade us of plaintiffs' assertion that O'Neil "procrastinated" or "failed to cooperate" prior to suit. Thus, the case is different from *Sciortino*, 934 F. Supp. at 279, and *Midwest*, 2004 U.S. Dist. LEXIS at *4, where it was judicially determined or admitted that documents were not produced. Finally, plaintiffs have not demonstrated what relief they obtained through suit that they did not – or could not – have obtained otherwise.

## II.

We now turn to Count II. In Count II, plaintiffs seek auditor fees, attorneys' fees, and interest. As for interest, that request was premised on recovery of contributions on which interest would be assessed. The plaintiffs recovered no monetary payment for contributions (or anything else) in the settlement, so there is no basis for awarding interest. As for the auditor fees, we see no basis for that request either, there is no claim in Count II of a failure to submit to an audit. Rather, the claim is based solely on a claimed failure of contributions.

Thus, in Count II, the only issue is attorneys' fees and costs. Plaintiffs seek an award of those fees and costs based on ERISA, the CBA and the Trust Agreements.

Insofar as the requested relief is based on ERISA, our discussion in Section I above applies. Plaintiffs are not prevailing parties under the *Buckhannon* rule. Moreover, under the *Hooper* analysis of the prevailing party standard, plaintiffs would not be prevailing parties because the sole relief sought on Count II was payment of money – and none was paid as part of the settlement reached. We see no reason to exercise any discretion we may have under ERISA to award plaintiffs fees on a $2,959.68 claim on which plaintiffs recovered nothing as part of the settlement.

We now turn to plaintiffs' claim for attorneys' fees and costs in Count II based on the CBA. We begin with the relevant language of the CBA, which states that "[i]n the event that an Employer becomes delinquent in making any of the aforesaid reports *and* payments . . . the Employer shall pay in addition to the amount due, reasonable fees of [accountants and attorneys]'" (Pls.' Exh. A, at 21, § 13.8) (emphasis added). The plaintiffs' motion requesting fees indicates that they read this language disjunctively, stating that the CBA says "if the Employer becomes delinquent in payment *or* 'in making any of the aforesaid reports,' it shall pay reasonable fees . . ." (Pls.' Mot. at ¶ 4, emphasis added). However, the plain language of the agreement is conjunctive ("reports *and* payments"). The plaintiffs have not offered any basis for their disjunctive reading. Because courts generally read the words of a statute or contract according to plain meaning, and because plaintiffs have not offered us an argument for why "and" should be read as "or," we will read this requirement as a conjunctive obligation.

However, plaintiffs would not fare any better even under their reading of the CBA. Plaintiffs have not established that there was a delinquency in reports or payments. At the conclusion of the audits performed by the Trustees, O'Neil was found to have paid all required fees due to the trust funds (Pl.'s Mot. at ¶ 12). Since the payments were made as required, O'Neil was not delinquent in making payments. And, because plaintiffs do not allege any delinquency in reports, there is no issue on that point. Thus, plaintiffs' request for an award of attorneys' fees and costs on the basis of the CBA must be denied.

Finally, insofar as the plaintiffs' claim is based on the Trust Agreements, most of the provisions plaintiffs cite do not speak to an award of attorneys' fees or costs in the event of litigation. The only ones that address this question do not support a fee award here. Section 3 of the Chicago

11

District Council of Carpenters Apprentice and Trainee Program Trust Agreement provides for the employer to pay attorneys' fees and court costs in the event that the Trustees "utilize legal counsel to aid them in securing compliance by any Employer" with the obligation to submit various reports (Pl.'s Mot., Ex. D). Here, Count II does not allege any failure to provide reports. Section 4 of the same Trust Agreement provides for assessment of attorneys' fees and costs when legal counsel is used to collect on a delinquency. While the complaint alleged a $3,000.00 delinquency, none was established through litigation. And, the absence of monetary payment in the settlement in no way supports plaintiffs' claim for fees under this provision. A plain reading of Section 4 does not support an award of attorneys' fees and costs where no delinquency was established or admitted, and no portion of the alleged delinquency was recovered in settlement.

## III.

Last, we address the defendant's request for attorneys' fees. We deny that request for several reasons.

*First*, defendant's request for attorneys' fees under Section 1132(g)(1) is subject to the same *Buckhannon* prevailing party standard as was plaintiffs' fee request. Defendant has failed to show that it has satisfied that standard.

*Second*, if we applied the *Hooper* two-pronged prevailing party test, defendant would fail to satisfy it. We know that defendant was able to settle the case without payment of money. But, we do not know the other terms of the settlement. Without knowing the other terms of the settlement, and whether they imposed any obligations on defendant, we cannot say that it would meet the prevailing party standard as articulated by *Hooper*.

12

*Third*, even if defendant were a prevailing party, under Section 1132(g)(1) an award of attorneys' fees and costs would not be automatic – it would be a matter of the Court's discretion. Having reviewed the correspondence submitted by the parties in connection with their dispute, we find that it does not establish that defendant stonewalled plaintiffs; but, it also does not establish that plaintiffs acted precipitously in initiating suit. It strikes the Court that this dispute is similar to countless others, where it may be far easier to assess the ultimate merit in hindsight than it was in foresight. What is clear is that when plaintiffs concluded that their claims for a monetary recovery would not likely succeed, they took action to bring this case to an end, instead of pushing the matter needlessly and wastefully through dispositive motions or trial. That is a decision to be commended. We thus see nothing about this case that persuades us to shift fees to defendant even were it the prevailing party.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion for fees (doc. # 25). The Court also denies defendants' motion for attorneys' fees (made in its opposition memorandum to plaintiff's motion for fees) (doc. # 30).

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: July 11, 2005**

13